USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/26/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOVANI FASHION, LTD.,

        Plaintiff,

v.

FEDERAL INSURANCE COMPANY AND GREAT NORTHERN INSURANCE COMPANY,

        Defendants.

No. 17-CV-4518 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Jovani Fashion, Ltd. brings this action against Defendants Federal Insurance Company and Great Northern Insurance Company for their alleged failure to defend and indemnify Plaintiff in an underlying lawsuit for copyright infringement.[1] On September 6, 2018, the Court granted Defendants' motion to dismiss Plaintiff's claims for failure to indemnify and breach of the implied covenant of good faith, but denied their motion with respect to Plaintiff's claim for failure to defend. Now before the Court are (1) Plaintiff's motion for reconsideration as to the duty to indemnify claim and for summary judgment as to the duty to defend claim, and (2) Defendants' motion for reconsideration, or in the alternative for summary judgment, as to the duty to defend claim. For the reasons provided below, Plaintiff's motion for reconsideration is denied, and Defendants' motion for reconsideration is granted. The parties' motions for summary judgment are denied as moot.

---

[1] On September 22, 2017, the Court dismissed Defendant Chubb Corporation without prejudice. Dkt. 21.

## BACKGROUND

In October 2016, Malibu Textiles, Inc. ("Malibu") sued Plaintiff for copyright infringement in the United States District Court for the Southern District of New York. *See* Case No. 16-CV-8409 ("Underlying Complaint" or "Underlying Action"). Malibu alleged that Plaintiff infringed on its copyrighted lace textile design ("Subject Design") by producing and selling garments with a substantially similar design. Compl. Ex. 1.[2] Two months later, Plaintiff gave Defendants, its insurers, notice of the Underlying Action, and requested that Defendants defend and indemnify it. Compl. ¶ 28. Pursuant to general and excess liability policies issued to Plaintiff, Defendants were obligated to defend and indemnify Plaintiff in any suit where a third party sought damages against Plaintiff for a personal or advertising injury, subject to exceptions listed in the policy's exclusion terms. Compl. Ex. 3, 4.

In January 2017, Defendants denied coverage to Plaintiff in the Underlying Action, explaining that the Underlying Complaint did not allege an infringement of any "copyrighted advertisement," as is required under the policy's definition of an "advertising injury." Compl. ¶ 29. Between January and April 2017, Plaintiff sent three letters contesting Defendants' coverage denial. In response, Defendants reiterated their view that Malibu had not alleged an injury within the policy's scope. Compl. Ex. 1, 2. During this time, Plaintiff and Malibu reached a settlement in the Underlying Action. Compl. ¶ 23.

In June 2017, Plaintiff filed this action, seeking damages and declaratory relief that Defendants had a duty to indemnify and defend it. Defendants filed a motion to dismiss. Dkt. 14. Plaintiff did not cross-move in any way. In its September 6, 2018 bench ruling, the Court granted Defendants' motion in part and denied it in part. While it granted Defendants' motion to

---

[2] The citations to the exhibits filed with the complaint reflect the numbering on the docket, not the numbering on the enclosed attachments.

dismiss the duty to indemnify and the breach-of-covenant claims, it denied the motion as to the duty to defend claim.

Both Plaintiff and Defendants filed motions for reconsideration, to be construed in the alternative as motions for summary judgment.

## STANDARD OF REVIEW

Motions for reconsideration are governed by Local Civil Rule 6.3 and Federal Rule of Civil Procedure 60(b). To prevail, the movant must identify "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). The standard "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Ultimately, however, whether to grant or deny a motion for reconsideration is "committed to the sound discretion of the district court." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 888 F. Supp. 2d 478, 483 (S.D.N.Y. 2012).

I. **Plaintiff's Motion for Reconsideration**

Plaintiff moves the Court to reconsider its prior ruling that Defendants had no duty to indemnify. In so doing, it only restates its previous arguments before the Court. *See Davidson v. Scully*, 172 F. Supp. 2d 458, 462 (S.D.N.Y. 2001) (explaining that a motion for reconsideration is not to be used as "a substitute for appeal"). For the reasons explained in the bench ruling, Plaintiff has not plausibly alleged an "advertising injury" as required by the policy's terms for coverage, and the Court denies Plaintiff's motion for reconsideration. Because this ruling

3

underlies the subsequent analysis regarding the duty to defend claim, the Court briefly elaborates on this holding.

An insurer's duty to indemnify "does not turn on the pleadings" but on "the actual basis for the insured's liability to a third person." *U.S. Fid. & Guar. Co. v. Fendi Adele S.R.L.*, 823 F.3d 146, 150 (2d Cir. 2016) (quoting *Atl. Mut. Ins. Co. v. Terk Techs. Corp*, 763 N.Y.S.2d 56, 60 (N.Y. App. Div. 2003)). Under New York law, which the parties agree applies, the insured bears the burden of establishing that a claim falls within the policy's scope. *See Con. Ed. Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 218 (2002).

The duty to indemnify, therefore, turns on a particular policy's terms. *See Fieldston Prop. Owners Ass'n v. Hermitage Ins. Co.*, 16 N.Y.3d 257, 264 (2011) ("In resolving insurance disputes, we first look to the language of the applicable policies."). "Insurance policies are contracts to which the ordinary rules of contractual interpretation apply." *Accessories Biz, Inc. v. Linda & Jay Keane, Inc.*, 533 F. Supp. 2d 381, 386 (S.D.N.Y. 2008). Its terms are to be construed "in light of 'common speech' and the reasonable expectations of a businessperson." *Fendi Adele*, 823 F.3d at 150 (quoting *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003)). "[T]he initial interpretation of a contract is a matter of law for the courts to decide." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (internal quotation marks omitted).

The policy provision relevant to this dispute is as follows below:

***Coverages***

> ***Advertising Injury and Person Liability Coverage***
> Subject to all of the terms and conditions of this insurance, we will pay damages that the **insured** becomes legally obligated to pay by reason of liability:
> - imposed by law; or
> - assumed in an **insured contract**;

4

for **advertising injury** or **personal injury** to which this coverage applies.

This coverage applies only to such **advertising injury** or **personal injury** caused by an offense that is first committed during the policy period.

Compl. Ex. 4. The policy defines an "advertising injury" and "advertisement" as follows:

### *Advertising Injury*

**Advertising Injury** means injury, other than **bodily injury, property damage** or **personal injury**, sustained by a person or organization and caused by an offense of infringing, in that particular part of your **advertisement** about your goods, products or services, upon their:

- copyrighted **advertisement**; or
- registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title.

### *Advertisement*

**Advertisement** means an electronic, oral, written or other notice, about goods, products or services, designed for the specific purpose of attracting the general public or a specific market segment to use such goods, products or services.

**Advertisement** does not include any e-mail address, Internet domain name or other electronic address or metalanguage.

Compl. Ex. 4. The policy also includes the following "intellectual property laws or rights"

("IPLR") exclusion, which applies broadly with one exception:

### *Intellectual Property Laws or Rights*

This insurance does not apply to any actual or alleged **bodily injury, property damage, advertising injury** or **personal injury** arising out of, giving rise to or in any way related to any actual or alleged:

- assertion; or
- infringement or violation;

by any person or organization (including any **insured**) of any **intellectual property law or right**, regardless of whether this insurance would otherwise apply to all or part of any such actual or alleged injury or damage in the absence of any such actual or alleged assertion, infringement or violation.

This exclusion applies, unless such injury:

5

- is caused by an offense described in the definition of **advertising injury**; and
- does not arise out of, give rise to or in any way relate to any actual or alleged assertion, infringement or violation of any **intellectual property law or right**, other than one described in the definition of **advertising injury**.

Compl. Ex. 4.

For the policy to cover the Underlying Action, Plaintiff was thus required to establish there was an alleged "advertising injury," specifically an alleged infringement of a "copyrighted advertisement." As the Court held in its oral ruling, however, Plaintiff cannot, as a matter of law, establish that the Subject Design was an "advertisement," let alone a "copyrighted advertisement," as the policy requires.

### A. The Subject Design Was Not an "Advertisement."

As alleged in the Underlying Complaint, Malibu "use[s] [the Subject Design] for purposes of textile printing." Compl. Ex. 1. Plaintiff argues that the Subject Design also constitutes an "advertisement" because of "Malibu's acts in disseminating the Subject Design to the public," which included (1) sending samples of the Subject Design to prospective customers; (2) displaying samples of the Subject Design in a showroom; and (3) posting pictures of the Subject Design on its publicly accessible website (also referred to as the "design library"). Compl. ¶ 39, 52-57; Pl.'s Mot. for Recons. at 8-9. Plaintiff asserts that its use of the product as an advertisement reflects the "real nature of the advertising model in the fabric making industry or other industries that use sample swatches or photographs as advertisements." Pl.'s Mot. for Recons. at 13. Defendants counter that, "[a]lthough Malibu's advertisements . . . bear the copyrighted Subject Design, the Subject Design itself is not Malibu's advertisement." Def.'s Reply Mot. at 4. The Court agrees.

6

Plaintiff's argument that a product can serve as an advertisement for itself fails in light of the policy's unambiguous language. Under the policy, an "advertisement" is a "notice, about goods, products, or services, designed for the specific purpose of attracting the general public or a specific market segment to use such goods, products or services." Compl. Ex. 4. This language creates a clear distinction between a product and an advertisement for that product. Because the Subject Design was designed, according to Malibu, for "purposes of textile printing" – and not for advertising – samples of the Subject Design or displays of it in a showroom cannot constitute advertisements of that design under the policy's terms. Compl. Ex. 1. To allow otherwise would render meaningless the policy's express distinction between a product and an advertisement of that product.

Moreover, by arguing that the Subject Design is itself an "advertisement," as that term is defined, Plaintiff asks the Court to employ an understanding of the term that defies "common speech." *Belt Painting Corp.*, 100 N.Y.2d at 383 (describing this interpretive tool as "fundamental[]" to reading an insurance policy). In *Ecko Group, Inc. v. Travelers Indemnity Company of Illinois*, for instance, the First Circuit rejected an insurer's similar attempt to argue that displaying a product (there, a teapot) served as an "advertisement" for itself. 273 F.3d 409, 413 (1st Cir. 2001) (reviewing a policy that defined an "advertising injury" as including a "[m]isappropriation of advertising ideas"). Among the reasons why the insured's argument failed, the court explained that "[t]o call a real teapot intended for sale as a kitchen utensil an 'advertising idea' is not a natural usage." *Id.* The "most common" understanding of an advertisement, the court said, is one "where the advertisement is an activity or item distinct from the product being advertised." *Id.*; *see also Krueger Int'l Inc. v. Fed. Ins. Co.*, 647 F. Supp. 2d

7

1024, 1034 (E.D. Wis. 2009) ("[A]dvertising is communication *about* a product, and as such it cannot logically be the product *itself*.").

Interpreting Defendants' policy to distinguish between a product and an advertisement for that product also has firm support in case law from this district. In *Accessories Biz, Inc. v. Linda & Jay Keane, Inc.*, 533 F. Supp. 2d 381, 383 (S.D.N.Y. 2008), the insured was alleged to have misappropriated samples of jewelry from a jewelry maker. The insured argued that the samples were a means of advertising the jewelry and that it was, therefore, entitled to indemnification and defense under an insurance policy's "advertising injury" provision, which requires that the insured have "misappropriat[ed] . . . advertising ideas." *Id.* at 384. Thus, before the court was essentially the same question presented here: whether samples of a product could constitute advertisements for that product. The court rejected this argument in stating: "New York courts have routinely held that the phrase 'advertising idea' does not include the product itself." *Id.* at 388.

Similarly, in *Hosel & Anderson, Inc. v. ZV II, Inc.*, No. 00 CIV 6957 (LAK), 2001 WL 392229, at *2 (S.D.N.Y. Mar. 21, 2001), the insured allegedly infringed on a copyrighted fabric design, but sought coverage under an insurance policy's "advertising injury" provision that required the injury to arise out of "[i]nfringement of copyright . . . in [the insured's] advertisement." The insured alleged that it had infringed the copyright in its advertisement because "the garments it made with the infringing fabric were their own advertisements." *Id.* Rejecting this argument, the court held that "[t]he product itself is not an advertisement within the meaning of the policy." *Id.*; *cf. Fendi Adele*, 823 F.3d at 152 (holding that a policy's definition of "advertising" does not encompass "the sale (without more) of counterfeit products" with a trademark on them because "[a]s a matter of common sense, there is a difference between

8

the placement of a counterfeit brand label on a handbag and the act of soliciting customers through printed advertisements or other media").

In support of its argument, Plaintiff relies primarily on one out-of-circuit case. *See* Pl.'s Mot. for Recons. at 13 (citing *Mid-Continent Cas. Co. v. Kipp Flores Architects, LLC*, 602 F. App'x 985, 994 (5th Cir. 2015)). In that case, the Fifth Circuit held that a home can serve as an advertisement for itself because showing it to prospective buyers is the "primary means of marketing" it. *Id.* The Court finds this authority less persuasive than the ones from this district, or from the out-of-circuit case law that supports the proposition that a product cannot serve as an advertisement for itself. For instance, in *Krueger International Inc. v. Federal Insurance Co.*, the court considered whether displaying furniture in a showroom constitutes advertising and soundly "reject[ed] [the] suggestion that the product itself, by virtue of its design, constitutes 'advertising.'" 647 F. Supp. 2d at 1034; *see also St. Paul Fire & Marine Ins. Co. v. Giganews, Inc.*, 193 F. Supp. 3d 745, 753 (W.D. Tex. 2016) (rejecting the insured's contention that "the use of [the copyright owner's] copyrighted content constituted 'advertising' because the images were 'publicly displayed' or 'offered' as a means of attracting (1) prospective customers to purchase new monthly subscriptions, or (2) current customers to purchase more expensive subscriptions"); *Farmington Cas. Co. v. Cyberlogic Tech., Inc.*, 996 F. Supp. 695, 703 (E.D. Mich. 1998) (noting that any definition of an advertisement requires that it "make a statement about its subject," and that therefore "[t]he product itself cannot meet this requirement").

Accordingly, the Court holds that Malibu's use of the Subject Design itself, whether as a sample or display in a showroom, does not, as a matter of law, constitute an "advertisement." These allegations thus do not plausibly allege an "advertising injury" as required by the policy for indemnification.

### B. The Subject Design Also Was Not a "Copyrighted Advertisement."

To the extent that Plaintiff contends that the Underlying Action alleged an infringement of a "copyrighted advertisement" because Malibu posted pictures of the Subject Design on its publicly accessible website, Compl. ¶ 39, 57, that argument also fails.

It is undisputed that Malibu registered the Subject Design with the Copyright Office as a "fabric design," not an advertisement. *See* Pl.'s Mot. for Recons. Ex. 2. It is also undisputed that Malibu only registered that Subject Design and not any independent advertisements of it. Nonetheless, Plaintiff argues that posting photos of the Subject Design online, seen by Malibu as a "publicly accessible online catalog of designs," constitutes "copyrighted advertisements." Compl. ¶ 39, 56-58. Plaintiff reasons that because Malibu uses the photos as advertisements and "Malibu's right to its Copyrighted Design can be embodied in a preferred medium of expression such as the website pictures," those pictures are therefore "copyrighted advertisements." Pl.'s Mot. for Recons. at 17.

This argument fails, first in light of the policy's IPLR exclusion. Other than a small carve out for infringement of a "copyrighted advertisement," the IPLR exclusion expressly precludes coverage for "copyright infringements." Compl. Ex. 4. Plaintiff reads the phrase "copyrighted advertisement" much more broadly, surmising that it must cover any advertising materials that display a copyrighted product. Were the Court to accept this expansive interpretation of a "copyrighted advertisement," however, Defendants could become liable to cover alleged copyright infringements well beyond the policy's intended scope, arguably rendering the IPLR exclusion surplusage. Another court in this district previously raised this concern when addressing similar facts:

> [I]f an action for copyright infringement could be turned into an "advertising injury" for the purposes of the insurance policy simply by the mention of advertising materials or the

10

inclusion of an advertisement as evidence of the underlying infringement, the policy's exclusion for copyright infringement would be rendered meaningless. It is clear from the context of the entire policy that it was intended to cover infringement of advertising concepts, and not copyright infringement more generally.

*Sunham Home Fashions, LLC v. Diamond State Ins. Co*, 813 F. Supp. 2d 411, 416 (S.D.N.Y. 2011). Because the Court must interpret the "advertising injury" provision to have its intended scope, it rejects Plaintiff's argument. *See Fed. Ins. Co. v. Int'l Bus. Machs. Corp.*, 18 N.Y.3d 642, 646 (2012) (requiring a court to "afford[] a fair meaning to all of the language employed by the parties in the contract and leav[e] no provision without force and effect" (quoting *Con. Ed. Co. of N.Y.*, 98 N.Y.2d at 222)).

In *Sunham Home Fashions, LLC v. Diamond State Insurance Co.*, another court in this district rejected an argument nearly identical to Plaintiff's. 813 F. Supp. 2d at 413. There, the policy's "advertising injury" was defined, as relevant here, as an alleged "[i]nfringement of copyrighted advertising materials." *Id.* The insured, alleged to have infringed on a copyrighted quilt design by selling substantially similar quilts, sought indemnification on the basis that it was also alleged to have infringed on "copyrighted advertising materials" because the quilt design was displayed in catalog advertisements. *Id.* The court disagreed, holding that there was no "alleg[ation] that [the insured] had used . . . copyright-protected advertising materials" simply because a picture of the copyrighted product was displayed in a catalog. *Id.* at 416. Plaintiff attempts to distinguish *Sunham* by arguing that the quilt only made up a small part of that advertisement, whereas the pictures on Malibu's website consist solely of the Subject Design. Pl.'s Reply Mot. for Recons. at 7. The *Sunham* court's reasoning, however, was not predicated on how much of the advertisement depicted the copyrighted product. *Sunham*'s holding, therefore, is equally applicable here: Alleging an infringement of a copyrighted design, which is

11

also depicted in advertisements online or in catalogs, is not the same as alleging an infringement of a "copyrighted advertisement."

*Clear Logic, Inc. v. Federal Insurance Co.*, No. C-03-444-JF, 2004 WL 2848017 (N.D. Cal. Mar. 31, 2004), similarly rejected Plaintiff's broad interpretation of the term "copyrighted advertisement." There, too, the insurance policy's "advertising injury" provision required an alleged "infringement of copyrighted advertising materials." *Id.* at *7. Like Plaintiff, the insured argued that "the phrase 'infringement of copyrighted advertising materials' . . . require[s] only that the insured's advertising contains materials subject to protection under the jurisdiction of the Copyright Office." *Id.* The court there held that "as a matter of law . . . the policy language is not susceptible of the interpretation argued by Clear Logic. The phrase 'copyrighted advertising materials' is straightforward and unambiguous – it clearly references advertising materials that are copyrighted." *Id.*; *see also Krueger Int'l, Inc.*, 647 F. Supp. 2d at 1038-39 ("[E]ven if the complaint in the underlying action could be read to allege copyright or trademark infringement based on [the] alleged misappropriation of S & P's furniture designs, there is certainly no allegation that KI made infringing use of copyrighted *advertising* materials."). The same is true here.

By contrast, Plaintiff has not cited – throughout the course of this litigation or in its motion for reconsideration – any case law supporting its argument that a photograph or other depiction of a copyrighted product displayed online or in a catalog constitutes a "copyrighted advertisement." Rather, the few cases that it has cited discuss only what might constitute advertising. For instance, in *Seneca Insurance Co. v. J.M.D. All-Star Import Export, Inc.*, 873 N.Y.S.2d 237, 2008 WL 4303075, at *2 (Sup. Ct. 2008), the only issue presented was "whether [the insured] 'advertised' in its business," not whether it engaged in copyrighted advertising. *See*

12

Pl.'s Reply Mot. for Recons. at 7-8. The same is true of Plaintiff's citation to *Mid-Continent Casualty Co.*, 602 F. App'x at 994, which held that homes built pursuant to a licensed design were advertisements because the "primary means of marketing . . . was through the use of the homes themselves." *See* Pl.'s Mot. for Recons. at 12-13. So too for *El-Com Hardware, Inc. v. Fireman's Fund Insurance Co.*, 111 Cal. Rptr. 2d 670, 679 (Ct. App. 2001), which concluded that the inclusion of a product's photo in a catalogue was an advertisement. *See* Pl.'s Reply Mot. for Recons. at 8. In short, none of the cases that Plaintiff cites endorses its broad view of the term "copyrighted advertisement."

Finally, the Copyright Office's registration requirements also undermine Plaintiff's contention that depicting a copyrighted work in a pictorial (otherwise un-copyrighted) advertisement should be accorded separate legal significance as a "copyrighted advertisement." When registering a claim to a copyright, the procedural requirements differ for filing a request for a fabric or textile and a "[p]ictorial advertising material." *Compare* 37 C.F.R. § 202.20(c)(2)(x) (requiring "the deposit of one copy in the form of an actual swatch or piece of such material sufficient to show all elements of the work in which copyright is claimed"), *with* 37 C.F.R. § 202.20(c)(2)(xiv) (requiring "the deposit of either one copy as published or prepublication material consisting of camera-ready copy"); *see also* 37 C.F.R. §§ 202.21-22.

Embracing Plaintiff's understanding of the term "copyrighted advertisement" could have sweeping consequences. To hold, as Plaintiff urges, that "post[ing] pictures bearing [a copyrighted design] on [a] website" should be "considered copyrighted advertisement" has no obvious limit. Indeed, Plaintiff's own hypothetical illustrates this problem:

> If the design was embodied as a picture on a photographic paper, the paper would be a copyrighted photograph. If the design was embodied on a tablecloth, the tablecloth would be a copyrighted tablecloth and so forth.

Pl.'s Reply Mot. for Recons. at 6.

Accordingly, even if pictures of the Subject Design on Malibu's website were to constitute "advertisements" under the policy, this simply does not amount to "copyrighted advertisements." For these reasons, the Court reaffirms its ruling that, as a matter of law, Defendants had no duty to indemnify Plaintiff, and Plaintiff's motion for reconsideration is denied.

## II.  Defendant's Motion for Reconsideration

The Court previously ruled that, although there was no duty to indemnify, Plaintiff had plausibly alleged that Defendant had a duty to defend it in the underlying action. Tr. at 29-30. Defendants moved for reconsideration of that ruling, to be construed in the alternative as a motion for summary judgment. *See* Defs.' Mot. for Recons. at 1. Plaintiff has also moved for summary judgment in its favor as to the duty to defend claim. Pl.'s Mot. for Recons. at 20.

An insurer's duty to indemnify and defend are distinct. *See City of Johnstown, N.Y. v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1148 (2d Cir. 1989). Under New York law, "an insurer's duty to defend is broader than its duty to indemnify." *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 157 (1992). In contrast to the duty to indemnify, which depends on the insurer's actual liability, the duty to defend requires "compar[ing] the allegations of the complaint to the insurance policy's terms." *Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 252 (S.D.N.Y.), *aff'd sub nom. Atl. Cas. Ins. Co. v. Greenwich Ins. Co.*, 548 F. App'x 716 (2d Cir. 2013). "[R]egardless of how false or groundless those allegations might be," there is a duty to defend so long as "the allegations . . . against the insured fall within the scope of the risks undertaken by the insurer." *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984). Moreover, the insured is not limited to the four corners of the complaint to demonstrate a possible factual or legal basis for indemnification. *See Fitzpatrick v. Am. Honda Motor Co.*, 78

N.Y.2d 61, 67 (1991). Even if the underlying complaint does not allege a covered occurrence as defined by the policy, an insurer must defend if it has "actual knowledge of facts establishing a reasonable possibility of coverage." *Id.* at 67.

Despite the duty's breadth, it "is not . . . without limits." *First Inv'rs Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 165 (2d Cir. 1998). "[A] court should not attempt to impose the duty to defend on an insurer through a strained, implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable." *Northville Indus. Corp. v. Nat'l Union Fire Ins. Co.*, 89 N.Y.2d 621, 634-35 (1997) (internal quotation marks omitted). "[I]f it can be determined as a matter of law that there is no possible basis in law or fact upon which the insurer might be held to indemnify," the insurer is relieved of its duty to defend. *Avondale Indus., Inc. v. Travelers Indem. Co.*, 887 F.2d 1200, 1205 (2d Cir. 1989).

Defendants argue that the policy did not cover Plaintiff's claim because Malibu did not allege an "advertising injury." Defs.' Mot. for Recons. at 11-16. More specifically, Defendants contend that neither the Underlying Complaint nor the extrinsic evidence that Plaintiff shared with Defendants created any factual or legal uncertainty as to whether it had a duty to indemnify, and consequently they had no duty to defend. *See* Defs.' Mot. for Recons. at 12-14.

After reviewing the parties' motions and upon further reflection, the Court grants Defendants' motion for reconsideration and holds that they did not have a duty to defend. Although an insurer's duty to defend is broader than its duty to indemnify, the indemnification analysis cannot be entirely disregarded. Whether there was any legal basis for indemnification is the critical consideration as to whether Defendants had a duty to defend. *See City of Johnstown*, 877 F.2d at 1149 ("A court applying New York law, then, should only excuse an insurer from its duty to defend if it can be concluded as a matter of law that there is no possible factual or legal

15

basis on which the insurer might eventually be held to indemnify the insured."). For the reasons stated above, Defendants had no duty to indemnify Plaintiff because Plaintiff failed to establish there was an alleged infringement of a "copyrighted advertisement," as a matter of law. Given that there was no uncertainty about this when Plaintiff notified Defendants about the Underlying Action in December 2016, or when Plaintiff shared extrinsic evidence with Defendants in the subsequent months, Defendants had no duty to defend.

Analyzing an insurer's duty to defend first requires comparing the facts and allegations in the underlying litigation to the policy's terms. *See Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 621 (2d Cir. 2001) ("Under some circumstances, the allegations contained in the complaint against the insured will by themselves eliminate all potential doubt and relieve the insurer of any duty to defend."). Here, the Underlying Complaint included no allegations that could constitute an "advertising injury" as defined by the policy. Malibu did not allege an infringement of any of its advertising, nor did the complaint even mention advertising at all. Rather, the Underlying Complaint focused entirely on Plaintiff's infringement of Malibu's "copyright by creating, making and/or developing directly infringing and/or derivative works from Subject Design and by producing, distributing and/or selling Subject Products through a nationwide network of retail stores, catalogues, and through on-line websites." Compl. Ex. 1. Therefore, based on the Underlying Complaint alone, Plaintiff did not plausibly allege an "advertising injury." *See CSG Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 77 (2d Cir. 2013) (explaining that an insurer avoids the duty to defend if "the allegations of an underlying complaint place that pleading solely and entirely within the exclusions of the policy and that the allegations are subject to no other interpretation").

Perhaps for this reason, Plaintiff does not argue that Defendants' duty to defend arose from the Underlying Complaint. Instead, it contends that it provided extrinsic evidence to Defendants that created sufficient legal and factual ambiguity about the breadth of the term "copyrighted advertisement" so as to implicate the duty to defend. Pl.'s Mot. for Recons. at 25-26; Pl.'s Reply Mot. for Recons. at 1. Despite Plaintiff's assertions, however, the extrinsic evidence did not create any "reasonable possibility of coverage." *Fitzpatrick*, 78 N.Y.2d at 66.

In its first letter to Defendants on January 24, 2017, Plaintiff merely asserted, without any legal support, that Malibu's use of the Subject Design as a sample, display in its showroom, and online in its "design library" rendered the Subject Design a "copyrighted advertisement." Compl. Ex. 1. The letter stated as follows:

> A plain reading of the complaint leaves no doubt as to existence of Malibu's copyrighted advertisement. . . . There is no dispute that the lace pattern alleged to be infringed by Jovani is not only copyrighted but in fact registered as claimed by Malibu in its complaint. As such, the allegation by Malibu of distributing its samples and strike-offs and posting the pattern on its website is considered **copyrighted advertisement**.

Compl. Ex. 1, 2. Not until its March 31, 2017 letter did Plaintiff cite case law, which it alleged supported its interpretation of a "copyrighted advertisement." Compl. Ex. 2. However, as the Court previously noted, these citations to *Seneca Ins. Co.*, 873 N.Y.S.2d 237, and *El-Com Hardware, Inc*, 111 Cal. Rptr. 2d 670, only discussed in what form a product could constitute an advertisement but said nothing about the meaning of a "copyrighted advertisement." They thus created no legal uncertainty as to whether Plaintiff's claim was covered. *Cf. Bridge Metal Indus. LLC v. Travelers Indem. Co.*, 812 F. Supp. 2d 527, 537 (S.D.N.Y. 2011) (holding that the law was unclear "based on the existence of applicable case law that rendered uncertain whether the term . . . would be deemed unambiguous"). At the time Plaintiff sought indemnification, the only relevant in-circuit case law considering the meaning of a "copyrighted advertisement" in

17

this context was *Sunham*. There, the court held that the infringement of a copyrighted quilt design, which was used in advertising, did *not* constitute an infringement of a "copyrighted advertisement." 813 F. Supp. 2d at 416-17. This is not, therefore, a situation where judicial disagreement created "doubt as to whether the claim c[ame] within the insurer's duty to indemnify." *Vill. of Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995).

Nor did the factual extrinsic evidence that Plaintiff provided to Defendants create ambiguity about the breadth of the term "copyrighted advertisement." *See* Pl.'s Mot. for Recons. at 25-26. Plaintiff, for instance, told Defendants in its January 24, 2017 letter that "[i]t is common knowledge in the fabric industry that textile manufacturers advertise their products by sending samples and strike-offs to their potential customers to elicit orders." *See* Compl. Ex. 1. Then, in its April 10, 2017 letter, Plaintiff enclosed Malibu's interrogatories from the Underlying Action, in which Malibu stated that it used samples of the Subject Design to advertise. Compl. Ex. 2. Another court in this district, however, had previously rejected an insured's nearly identical argument that samples of a product could constitute advertisements. *See Accessories Biz, Inc.*, 533 F. Supp. 2d at 387. This extrinsic evidence thus did not reasonably affect Defendants' conclusion that it had no duty to indemnify.

Finally, not discussed in the bench ruling, is the policy's IPLR exclusion. Although unnecessary to this holding because Plaintiff cannot establish coverage in the first place, it provides further support for Defendants' refusal to defend Plaintiff. Because Plaintiff could not establish an "advertising injury," Plaintiff was only asking Defendants to defend it in an action regarding an alleged infringement of a copyrighted design. The IPLR exclusion, however, broadly bars coverage for this type of injury. With no support for Plaintiff's "advertising injury"

18

claim and coverage otherwise barred by the IPLR exclusion, Defendants correctly refused to defend Plaintiff in the Underlying Action. *See Spandex House, Inc. v. Hartford Fire Ins. Co.*, 18-CV-8367 (VEC), 2019 WL 4014232, at *5 (S.D.N.Y. Aug. 26, 2019) ("[T]he duty to defend is triggered only if there is a '*reasonable* possibility of recovery' under the policy.'").

The Court's bench ruling on the duty to defend relied largely on the extrinsic evidence shared with Defendants. Tr. at 30-32. Considering the extrinsic evidence was proper. Upon reflection, however, the Court believes it gave too much weight to the purported common practice in the industry when the critical point is that, as a matter of law, the policy was not susceptible to Plaintiff's interpretation of "advertising injury." *See Sunham Home Fashions, LLC*, 813 F. Supp. 2d at 416-17 (holding that the display of a copyrighted quilt design in a catalog advertisement did not constitute "copyright-protected advertising materials"); *Clear Logic, Inc.*, 2004 WL 2848017, at *7 (rejecting the argument that "advertising materials depicting Altera's mask works would constitute 'infringement of copyrighted advertising materials'"). Although the duty to defend is broad, it does not go so far as to require an insurer to defend when "it can be determined as a matter of law that there is no possible basis in law or fact upon which the insurer might be held to indemnify." *Avondale Indus., Inc.*, 887 F.2d at 1205.

As such, the Court is required to correct the clear error in its prior ruling, and exercises its discretion to grant Defendants' motion for reconsideration. *See Abu Dhabi Commercial*, 888 F. Supp. 2d at 483; *see also Shrader*, 70 F.3d at 257 (granting a motion for reconsideration is appropriate when "the court overlooked [] matters . . . that might reasonably be expected to alter the conclusion reached by the court"). Simply put, the policy was not susceptible to Plaintiff's interpretation of "advertising injury."

19

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration is denied, and Defendants' motion for reconsideration is granted. The parties' motions for summary judgment are denied as moot. The Clerk of Court is respectfully directed to terminate all pending motions and close the case.

Dated: September 26, 2019
New York, New York

Ronnie Abrams
United States District Judge